Murdock v. Murdock.

---

### Watson Murdock, et al., v. Sarah M. Murdock.

1. ANTE-NUPTIAL CONTRACT—*when should be set aside.* Where it appears that at and prior to the execution of an ante-nuptial contract the affianced husband did not fully and fairly acquaint his betrothed of the means at his disposal, such contract should be set aside.

2. WITNESS—*when incompetent by reason of interest.* A widow is incompetent by reason of interest in an action instituted by her against the heirs of her deceased husband to set aside an ante-nuptial contract.

BAUME, J., dissenting.

Bill to set aside ante-nuptial contract. Error to the Circuit Court of Douglas County; the Hon. W. C. JOHNS, Judge, presiding. Heard in this court at the November term, 1904. Affirmed. Opinion filed June 7, 1905.

JOHN H. CHADWICK, THOMAS W. ROBERTS, ECKHART & MOORE and P. M. MOORE, for plaintiffs in error.

I. A. BUCKINGHAM and ROY F. HALL, for defendant in error.

MR. JUSTICE GEST delivered the opinion of the court.

John D. Murdock lived in the little village of Murdock in his own house, a Mr. and Mrs. Shell keeping house for him, and was of the age of seventy-six years. He was the owner of 875 acres of land situated in Douglas county and was possessed of personal estate of the value of from ten to fifteen thousand dollars. He was a widower and had six children, two sons and four daughters, all adults and caring for themselves. Mrs. Sarah M. Bentley was a widow of the age of fifty years and had two children, a son and daughter, both adults and having their own homes. She also lived in the village of Murdock on the same street on which Mr. Murdock lived, there being but one house and lot between their residences. She had a homestead estate in the house and lot which she occupied and also was possessed of personal estate of the value of from one hundred and fifty to two hundred dollars and had no prospect of obtaining any more property, real or personal.

On the 26th day of July, 1892, Mr. Murdock and Mrs. Bentley were married. On the 25th day of July, 1892, the day before their marriage, the following paper was executed and acknowledged by them:

"*This agreement* made and entered this twenty-fifth day of July, A. D. 1892, by and between John D. Murdock, of the county of Douglas and state of Illinois, party of the first part, and Sarah M. Bentley, of the county of Douglas and state of Illinois, party of the second part; Witnesseth, that,

*Whereas,* a mariage contract has been entered into by and between said parties; and,

*Whereas,* in pursuance of said marriage contract, a marriage is about to be solemnized between said parties; and,

*Whereas,* the said party of the first part is possessed of certain real and personal estate in said county, and a life interest in certain real estate in said county; and,

*Whereas,* the said party of the second part is also possessed of certain real estate and personal estate in said county; and,

*Whereas,* each of said parties have living children by a former marriage; and

*Whereas,* all of said children are now adults; and,

*Whereas,* each of said parties desire to forever relinquish and discharge to the other, all right or interest of every kind or character which either may have or acquire in the estate of the other by virtue of such marriage, except the respective estate of homestead, if any; and except also, widow's award; and,

*Whereas,* the said John D. Murdock is desirous that the sum of fifteen hundred dollars ($1,500) shall be paid to the said Sarah M. Bentley after his death in case he does not survive her, to assist her in supporting and maintaining herself, and that she shall receive said sum in case she survives him, in lieu of all her right and interest of every kind of character which she may acquire in and to his said estate, by virtue of such marriage, except her homestead right therein, if any; and except, also, her widow's award therein. Now,

*Therefore,* In consideration of the premises and one dollar in hand paid by the said party of the first part, the receipt whereof is hereby acknowledged, and in consideration of the covenant and agreements of the said party of the second part hereinafter set forth and contained, said party of the first part, for himself, his heirs and personal representatives, hereby covenants, bargains and agrees to and with the said party of the second part, her heirs and personal representatives, that in the event of his death leaving her surviving him, as his widow, there shall be paid to her out of his estate the said sum of fifteen hundred dollars ($1,500), to be in lieu of all the right, interest or claim of every kind and character, except homestead, if any; and except, also, widow's award, which by virtue of said marriage she can or may acquire as widow, or heir, or otherwise, in and to any estate, real, personal or mixed, which ever has been, now is, or hereafter may be owned, acquired or possessed by him, the said party of the first part, and to be in full and absolute discharge of any and all such right, claim or interest,

except said estate of homestead and widow's award, which said party of the second part can, in any manner, by virtue of such marriage, or otherwise, acquire in and to any of said estate. The sum of fifteen hundred dollars to be paid to her by his executors or administrators within sixty days after said executors or administrators shall be qualified to act as such, and the receipt of the said party of the second part shall be sufficient voucher for the payment to her of said money for the purposes aforesaid;

And the said party of the first part, for the consideration aforesaid, also forever hereby releases, relinquishes and discharges all interest of every kind or character whatsoever, except his estate of homestead, if any, which by virtue of said marriage he can or may acquire as surviving husband or heir in and to any of the estate, real, personal or mixed, which ever has been, now is, or hereafter may be acquired, owned or possessed by the said party of the second part; and that he will at all times after said marriage upon request of said party of the second part, duly execute and acknowledge any and all such deeds of conveyance, mortgages, releases, trust deeds, or other instruments in writing as may be necessary and proper for the releasing, conveying, satisfying and discharging any and all of his interests, title or claim, whether as heir, owner, or otherwise of, in and to the estate, real, personal or mixed, of the said party of the second part, wherever the same may be situated;

And the said party of the second part, for herself, her heirs, executors and administrators doth covenant and agree to and with the said party of the first part, his heirs and personal representatives that in consideration of the covenants and agreements aforesaid of the said party of the first part, and the provision herein made by him for her use and benefit, that she will, and for the consideration aforesaid, she does hereby relinquish, release and discharge all her claim, right, or interest of every kind or character, except her estate of homestead, if any, and except, also, her widow's award which by virtue of said marriage or otherwise she can or may acquire as widow or heir, or otherwise, in and

to the said estate, real, personal or mixed, of the said party of the first part, whether heretofore possessed or owned by him at the time of their marriage or acquired by him at any subsequent time and that she will receive and accept the aforesaid sum of fifteen hundred dollars ($1,500) in lieu of and in full satisfaction and discharge of any and all such claims or interest except her estate of homestead and widow's award, if any, which by virtue of said marriage she can, or may acquire as widow, heir or otherwise in any of said estate of said party of the first part, so possessed, owned or acquired by him, or so now owned by him, or which he may hereafter acquire, as aforesaid;

And for the consideration aforesaid, the said party of the second part further agrees that at any and all times after said marriage, upon request of said party of the first part, she will duly execute and acknowledge all such deeds of conveyance, mortgages, trust deeds, releases, acquittances, or other instruments in writing as may be necessary and proper for conveying, releasing, satisfying, or discharging any and all interest, right, title or claim whether as owner, heir or otherwise, of, in and to any of the estate, real, personal or mixed, of any party of the first part, hereinbefore mentioned.

The true intent, object and meaning of these presents is to forever release, discharge, satisfy and relinquish all the claim, right, title and interests, except said homestead interests, if any, and except said widow's award, which each and either of said parties can or may, by virtue of said marriage as widow, surviving husband, or heirs or otherwise, acquire in and to any of the real, personal or mixed estate which ever has been, now is, or hereafter may be owned, possessed or acquired by the other, and to settle upon the said party of the second part the gross sum, being the sum last above mentioned, upon the terms and conditions hereinbefore stated, to stand, and to be instead of, for in lieu of all claims to, or interest, except her homestead interest, if any; and except, also, said widow's award, which said party of the second part might, could or would acquire in and to the estate

of the party of the first part hereinbefore named, had this agreement and the covenants herein contained never been made or entered into.

In witness whereof, The said parties to this instrument have hereunto set their hands and seals, this 25th day of July , A. D. 1892.

JOHN D. MURDOCK,          [SEAL.]

SARAH M. BENTLEY,          [SEAL.]

STATE OF ILLINOIS, ⎱ ss.
DOUGLAS COUNTY, ⎰

I, J. W. Hamilton, a notary public, in and for the said county in the state aforesaid, do hereby certify that John D. Murdock and Sarah M. Bentley, personally known to me to be the same persons whose names are subscribed to the fore-going instrument, appeared before me this day in person and acknowledged that they signed, sealed and delivered the said instruments as their free and voluntary act for the uses and purposes therein set forth.

Given under my hand and notarial seal, this 25th day of July, A. D. 1892.          J. W. HAMILTON,
                                        *Notary Public."*

[SEAL.]

Some weeks previous to the execution of this paper they had agreed to marry, his children were strongly opposed to the marriage, Mrs. Bentley was aware of their opposition, and had urged Mr. Murdock to deed his lands to them in order to abate or remove their feeling of ill-will to her, and on July 16th he did make deeds of conveyance of his farm lands to his children, separate parcels to each, but in all these deeds he reserved to himself the use of the lands during his life.

This bill is brought by defendant in error to set aside the above mentioned ante-nuptial contract. Answers and replications were filed and the cause referred to the master to take the proofs and make report. The master reported the evidence taken, his finding thereon, and recommended that

the bill be dismissed for want of equity. The complainant filed exceptions to the several findings by the master some of which exceptions were overruled and some of which were sustained and the court entered its decree setting aside the ante-nuptial contract in so far as the personal estate of John D. Murdock is concerned and ordering "that the complainant have and take of the personal property of the estate of said John D. Murdock the widow's award as the same has been determined and allowed, and also such share and interest in the personal estate of the said John D. Murdock as she would have received or been entitled to under the law had no agreement ever been made between the complainant and the said John D. Murdock." Plaintiffs in error ask the reversal of that decree.

The general principles of law pertaining to ante-nuptial contracts have been very clearly established by the Supreme Court of this state. In substance they are: When man and woman become engaged to marry there arises between them out of such engagement a fiduciary relation which, when he thereafter asks her to execute a contract which shall absolutely fix her interest in the estate then held by him and thereafter to be by him acquired, requires the utmost frankness, fairness and truthfulness from him to her whom he has promised to make his wife, and if by any actual fraud, *suggestio falsi,* by him she be induced to make such a contract, or if by mere concealment, *suppressio veri,* by him she be thereto led, or if by mere failure to inform her of the nature, character and value of his estate, failure on his part without actual intent by him to conceal or defraud, she not being shown to have such information, she be led to execute such contract, or if the provisions and effect of the contract, if not shown to be known and understood by her be not fully explained to her so that it may be seen that her execution of the contract was with full knowledge of its effect upon her prospective interest in her promised husband's estate, she is not bound by such contract, the law deems it a fraud upon her. "After the marriage engagement is entered into the relationship between the parties is confidential, and the

intended wife is supposed to confide in the man to whom she is betrothed, to deal fairly and justly with her." Hessick v. Hessick, 169 Ill., 491. "Parties to an ante-nuptial contract occupy a confidential relation towards each other. While they may lawfully contract with each other, where there is full knowledge of all that materially affects the contract, yet where the provision secured for the intended wife is disproportionate to the means of the intended husband, it raises the presumption of designed concealment and throws the burden upon those claiming in his right to prove by satisfactory evidence that appellee had knowledge of the character and extent of her intended husband's property and of the provisions and effect of this instrument, or, at all events, that the circumstances were such that she reasonably ought to have had such knowledge at the time this instrument was executed." Taylor v. Taylor, 144 Ill., 445. The foregoing is quoted with approval in the Hessick case, *supra,* and it is there stated: "The rule announced in the Taylor case must be accepted as the settled law of this state."

It appears from the testimony of J. M. Hamilton, a witness for defendants, that he was a clerk in the law office of C. W. Woolverton at Tuscola and that Mr. Murdock went to Woolverton's office two weeks before the contract was executed and gave directions for its preparation and that he came alone. There is no proof in the record that Mrs. Bentley knew of that visit or its purposes or that any ante-nuptial contract was under consideration by him until on the day and at the time when it was executed at Woolverton's office. There is no proof that on the day the contract was executed anything was said to or in the presence of Mrs. Bentley concerning the nature, character, or value of Mr. Murdock's property then owned by him, either real or personal, except as it is described in the contract itself. There is no proof that Mrs. Bentley then knew the nature, character and value of his personal estate unless it is to be inferred from the facts that they lived very near each other in the same village and had so lived for quite a number of years and that he had generally been reported to be a wealthy

man. Such proof is wholly insufficient. Hessick v. Hessick, *supra*. There is no proof that she knew that he had reserved his life interest in the real estate which he had conveyed to his children except as the contract states that he had a life interest in some real estate not described. The legitimate inference from the evidence concerning the conveyance of his lands is that she understood he had conveyed all his farm lands to his children in fee simple without reservation. The proof is that his personal estate at the time of making the contract was of the value from ten to fifteen thousand dollars and that the rents of his lands in which he reserved his life interest brought him at least the sum of four thousand dollars annually, and the proof is that his personal estate at the time of his death, nine years and some months after his marriage, was of the value of about thirty-five thousand dollars.

There is no charge in the bill of fraud on the part of John D. Murdock. The bill avers that he did not mean or understand that the contract would deprive complainant of her one-third interest in the personal estate he might have at his death and further avers "that said sum mentioned in said ante-nuptial contract is inadequate and disproportionate to the means of her said husband and unjust and fraudulent." It is the situation of the parties at the time the contract is made which the law requires to be taken into consideration. Mr. Murdock was then possessed of personal estate in the amount of from ten to fifteen thousand dollars and then was also the owner of an estate for his own life in eight hundred and seventy-five acres of farm land in Douglas county of a yearly rental value of at least five dollars per acre. Complainant then had no right or interest in said life estate nor could she at any time thereafter obtain any right or interest therein by virtue of the proposed marriage but it was a part of Mr. Murdock's then means and a very large part, bringing to him yearly the sum of four thousand dollars. He then was seventy-six years old but his health and strength were good and promised some years of life to come, a promise which was in fact kept good for the period of nearly ten years. We

see no reason in the law why Mrs. Bentley should not have been informed of that life estate and the moneys coming therefrom yearly. True, she had no actual right, interest or title in the life estate itself, neither had she any actual right, interest or title in any of his personal estate, but she was entitled under the law to full and fairly complete information of the actual estate and means and the actual and fixed sources of income by him then possessed both real and personal. We do not deem the fact that the life estate was of uncertain duration as any excuse or justification for the failure to give information thereof. She had right to the knowledge, and then with full knowledge, she could exercise her right to choose between the provision of fifteen hundred dollars in the contract and the provision made by the law. Nor does it operate against her that she understood that he had conveyed his lands without reservation. The fact was that he had not so conveyed them, that he still had his large source of income which in all reasonable expectation would largely increase his personal estate from year to year, and which was then worth in cash several thousands of dollars. The failure to inform her of this life estate interest was fraudulent in law. We deem it unnecessary to discuss the question whether the contract should be deemed inequitable, leaving out of consideration the matter of the life estate.

The bill also avers that there was no consideration for the contract, that the agreement to marry had been made long before the ante-nuptial contract was made and that marriage was no part of the consideration of that contract. The proof wholly fails to show that it was any part of this marriage engagement that an ante-nuptial contract should be entered into and that such a contract was then under consideration by either of them; but we do not understand that persons making an engagement to marry must at the same time and as a part of such contract to marry, agree upon the making of an ante-nuptial contract. An ante-nuptial contract may lawfully be entered into after the engagement to marry and as we suppose is generally so done. It is the mere fact that such engagement has been made, the fact of the relation so

created that imposes upon the man the duty of absolute frankness, fairness and truthfulness above mentioned and upon those claiming under him the burden of proving that there was no failure on his part in those respects.

Plaintiffs in error state the following proposition: "The chancellor, being the judge both of the law and the evidence, the presumption is that in rendering his decree he will regard that which is legal and pertinent; and the chancellor should only consider such evidence as is material and legal in rendering a decree." We think that proposition states the law correctly.

They also state that complainant was an incompetent witness as to facts occurring prior to the death of John D. Murdock. We agree to that proposition under the conditions and circumstances shown in this case. They also state that it is apparent that the chancellor considered her testimony in reaching his conclusions. The complainant was not a witness upon her case in chief but in rebuttal she gave some testimony which was not competent to be heard in support of the averments of her bill. It is not claimed by her counsel that it is competent for that purpose but that it is competent for the purpose of impeachment. It is not apparent to us that her testimony was considered for any purpose, but whatever the view of the trial court may have been as to the competency of her testimony our conclusion is that, rejecting it all for any purpose, the evidence remaining warrants and requires the decree which was rendered.

The decree is just and in accordance with the law and will be affirmed.

*Affirmed.*

Mr. Justice Baume, dissenting.